Marianne Dugan (OSB # 932563)
Internet e-mail address mdugan@mdugan.com
259 E. 5th Ave., Suite 200-D
Eugene, OR 97401
(541) 338-7072
Fax no. 866-650-5213

    Local Counsel for Plaintiff


[*Pro hac vice* application will be filed by:

Michael W. Macomber, Esq.
Tully Rinckey P.L.L.C.
441 New Karner Rd.
Albany, New York
(518) 218-7100
Fax no. (518) 218-0496

    To be lead counsel for plaintiff]

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JAMES M. MURPHY, M.D.,** | No. 3:14-CV-1498 |
| Plaintiff, | COMPLAINT - USERRA |
| v. | |
| **TUALITY HEALTHCARE**, | |
| Defendant. | JURY TRIAL REQUESTED |

## NATURE OF THE ACTION

    1.    This is an action to recover damages and liquidated damages pursuant to the

*Uniformed Services Employment and Reemployment Rights Act* (hereinafter "USERRA"), 38

PAGE 1 - COMPLAINT - USERRA

U.S.C. §§ 4301, *et seq*.

2. Defendant Tuality Healthcare ("Tuality") willfully and repeatedly violated USERRA.

3. Tuality failed to reemploy plaintiff James M. Murphy, M.D. ("Murphy") in the position he would have held if his employment with Tuality had not been interrupted by orders to active duty.

4. Tuality unlawfully terminated Murphy without cause only a few days into a statutorily protected one hundred and eighty (180) day protective period.

5. Tuality unlawfully discriminated against Murphy upon his return from active duty military officer training through a series of actions designed to ostracize Murphy.

6. Tuality conspired to, agreed upon, and undertook a series of retaliatory and defamatory actions against Murphy for having enforced his rights under USERRA.

## PARTIES

7. Murphy is a resident of the City of Portland, Oregon and a Lieutenant Colonel in the Oregon Air National Guard (hereinafter "Guard").

8. Tuality is a domestic nonprofit corporation with a principal place of business located at 335 SE 8th Ave, Hillsboro, Oregon.

## JURISDICTION

9. This action is within the jurisdiction of this Court pursuant to 38 U.S.C. § 4323(b)(2).

10. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b). The events giving rise to Murphy's claims occurred in this judicial district.

**GENERAL FACTUAL ALLEGATIONS**

11. From the time he contracted with Tuality to the present, Dr. Murphy has maintained an unrestricted Oregon medical license and ABA board certification as an anesthesiologist.

12. Murphy attended the Saba University School of Medicine and graduated with a doctorate in medicine in 1996.

13. Following medical school, Murphy completed his residency working at West Virginia University, the University of Virginia, Roanoke, and the Oregon Health and Sciences University in Portland Oregon.

14. In or around April 2004, Murphy accepted a position of trauma anesthesiologist and clinical professor with the University Medical Center School of Medicine in Las Vegas, Nevada.

15. In or around July 2005, Murphy entered the United States Air Force Reserve.

16. In or around 2008, Murphy transferred to the National Guard and at all times relevant to this action, Murphy was (and remains) an active military officer with the Guard.

17. Tuality is a community-governed acute-care hospital located in Hillsboro Oregon, which offers surgical services providing medical services to the Portland metropolitan area.

18. As part of Tuality's surgical services, Tuality requires the services of anesthesiologists.

19. In or around March 2008, Murphy was recruited by Tuality to provide anesthesiologist services at the hospital, and Tuality entered into a contract directly with Murphy to do so.

20. At all times relevant herein, Tuality was aware that Murphy was an officer in the National Guard.

21. In or around May 2008, Murphy met with the Medical Director, John Coletti regarding the Anesthesiologist position and was presented with a Physician Development Agreement (hereinafter "PDA") and Anesthesia Services Agreement (hereinafter "ASA").

22. Tuality's anesthesiologist department is a "closed" department, meaning that, regardless of whether an anesthesiologist has privileges to work at the hospital, only those anesthesiologist employees who have an exclusive anesthesia contract are allowed to work in the operating room.

23. Furthermore, under the ASA, anesthesiologist employees like Murphy were not allowed to provide services at other hospitals without the express permission of Tuality.

24. As set forth in the PDA, Tuality agreed to provide Murphy with "advances" and "assistance" in the forms of monetary compensation that was to be repaid after a pre-determined period of time. Specifically, Tuality would forgive one-half of the outstanding debt for every twelve months Murphy worked following the last payment.

25. Murphy started working for Tuality on or about June 2, 2008.

26. As an anesthesiologist working for Tuality, Murphy was one of several anesthesiologists responsible for coverage for the hospital twenty-four hours a day, seven days a week.

27. Tuality's medical staff office and officers have authority to approve or suspend/revoke a physician's staff privileges after the hospital has credentialed the physician.

28. The hospital's credentialing committee approves the physician credential (training

and licensing).

29.     The hospital administration can offer exclusive contracts for certain services (for example, emergency, pathology, anesthesia) and/or pay stipends to guarantee the availability of services.  The hospital (which owns the physical equipment/building and pays the staff) can limit access to that equipment, even if the physician is credentialed and has privileges to use it to treat patients.

30.     Between June 2008 and October 2009, Murphy's military service obligations was limited to weekends and was easily scheduled with Tuality to limit the burden on the other anesthesiologists sharing coverage duties.

31.     On or about June 30, 2009, the anesthesiologists met to discuss vacation planning and coverage for the upcoming months.  During this meeting, Murphy disclosed the fact that he had an upcoming six week military commitment to perform flight medicine training in September 2009, as a member of the Oregon Air National Guard.

32.     During this meeting, Murphy was confronted in separate sidebar conversations by several of Tuality's anesthesiologists regarding his planned active duty training of six weeks and as to whether there would be future long absences that would effect the vacation and call schedules.  The tone of these conversations was of concern to Murphy, because of the hospital-imposed limitations of only allowing Tuality-contracted anesthesiologists to cover operating rooms.  These anesthesiologists included, but were not limited to Cliff Tsai, Agnes Helak, and Steven Eyler.

33.     On September 4, 2009, Murphy was arrested after an altercation with Michael Duran, an anesthesiologist contracted by the hospital, who was attempting to enter Murphy's

home after being verbal abusive and physically intimidating to Murphy's wife and another woman at a restaurant. Murphy's wife was fearful of Duran's aggressive behavior and Murphy had to physically restrain him from entering their home. Duran had previously been convicted of spousal abuse and there were numerous complaints against him at the hospital.

34. Murphy was held in custody for less than twelve hours. The charges were dismissed and the arrest was expunged.

35. Murphy assumed both general and cardiac call at the hospital immediately upon his release from custody. Dr. Hildebrant had been on call up until that point, and there was no break in coverage.

36. Murphy remained on call for both general and cardiac call for the next three days, which was Labor Day weekend.

37. On September 11, 2009, Murphy began his six-week military training for flight surgeon training with the Guard.

38. On or about October 24, 2009, Murphy's military orders ended.

39. On October 27, 2009, Murphy reported to work and met with Nathan Hildebrant and Manuel Berman, Chief Operating Officer for Tuality. During this meeting, Murphy was informed that Tuality was terminating his employment.

40. On October 28, 2009, Murphy received formal written notice pursuant to Section 7.2 of the ASA, terminating Murphy's employment "without cause."

41. On January 26, 2010, Murphy's employment with Tuality ended. At no point in time did Tuality suspend, terminate, or revoke Murphy's medical staff membership or privileges. No disciplinary actions were taken against Murphy by Tuality as Murphy did not violate any

hospital policy.

42. After January 26, 2010, Murphy was prohibited from exercising his clinical privileges at the hospital, and was not allowed to administer anesthesia to patients at Tuality, because he did not have a contract, despite having unrestricted credentialing and privileges.

43. As a result of his termination, Murphy was also denied the contractual benefit of debt forgiveness under the PDA, eventually resulting in a binding arbitration judgment of almost $400,000 against Murphy.

## FIRST CAUSE OF ACTION

### (Failure to Reemploy)

44. Murphy realleges and incorporates the allegations of the foregoing paragraphs as if set forth fully herein.

45. USERRA provides that an employer must reemploy a person whose employment is interrupted by service in the uniformed service.

46. 38 U.S.C. § 4312 provides that any person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits of USERRA.

47. 38 U.S.C. § 4313 provides that when an individual's service in the uniformed service is for less than ninety-one (91) days, the individual must be employed in the position of employment in which that individual would have been employed if the continuous employment had not been interrupted by such service, the duties of which the person is qualified to perform.

48. Murphy was entitled to reemployment in October 2009, because he met the eligibility criteria set forth in sections 4304 and 4312 of USERRA, 38 U.S.C. §§ 4304, 4312.

Murphy left his position of employment for the purpose of performing uniformed service, he gave Tuality prior oral and written notice, he did not exceed the five-year limit on the duration of the period of uniformed service, he was released from service without having received a punitive or other-than-honorable discharge and he made a timely application for reemployment.

49.     Tuality failed to properly reemploy Murphy in the position of employment he would have held, and which he was qualified to perform, and which Murphy would have been employed had his continuous employment with Tuality not been interrupted by his service with the Guard

50.     On or about October 28, 2009, Tuality gave Murphy ninety (90) days' notice that it was terminating Murphy's contract without cause.  On or about January 26, 2010, Murphy's employment with Tuality terminated.

51.     As a direct and proximate result of the intentional refusal to reemploy Murphy, Murphy has suffered injuries and damages including but not limited to, loss of past and future earnings and loss of past and future benefits.

52.     Such violations of USERRA were willful and Murphy requests an award of liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

## SECOND CAUSE OF ACTION

### (Discharge Without Cause Within 180 Days of Reemployment)

53.     Murphy realleges and incorporates the allegations of paragraphs 1 through 41 of this complaint as if set forth fully herein.

54.     USERRA provides that a person reemployed under USERRA shall not be discharged from such employment except for cause within one hundred and eighty (180) days if

his or her service in the uniformed service was greater than thirty (30) days and less than one hundred and eighty-one (181) days.

55. Murphy's military service with the Guard was for more than thirty (30) and less than one hundred and eighty (180) days.

56. Murphy received notice of his termination without cause after only a few days into the statutorily prescribed one hundred and eighty (180) day period after his reemployment.

57. As a direct and proximate result of the intentional refusal to reemploy Murphy for the statutorily prescribed period, Murphy has suffered injuries and damages including but not limited to, loss of past and future earnings and loss of past and future benefits.

58. Such violations of USERRA were willful and Murphy requests an award of liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

## THIRD CAUSE OF ACTION

### (Discrimination under 38 U.S.C. §§ 4301 *et seq*.)

59. Murphy realleges and incorporates the allegations of Paragraphs 1 through 41 of this complaint as if set forth fully herein.

60. USERRA prohibits discrimination against employees (as broadly defined under USERRA) who have been called to duty in the uniformed service. Specifically 38 U.S.C. § 4311 provides that an employee may not be denied retention in employment or a "benefit of employment" because of the employee's membership in the uniformed service.

61. The term "benefit of employment" is broadly defined to include any advantage, profit, gain, privilege, status, account or interests, as that term is broadly defined under section 4303(2) of USERRA, 38 U.S.C. § 4303(2). The opportunity to select work hours and locations

of employment are benefits which are included under this broad definition.

62. Tuality discriminated against Murphy in violation of USERRA when Tuality terminated Murphy's contract without cause upon his return from active duty.

63. Tuality further discriminated against Murphy in violation of USERRA when Tuality barred Murphy from exercising his clinical privileges at the hospital.

64. Tuality further discriminated against Murphy in violation of USERRA when Tuality denied Murphy the contractual benefit of debt forgiveness as set forth in the PDA.

65. Murphy's military service was a motivating factor in Tuality's actions in denying Murphy retention in employment and/or denying Murphy from exercising his clinical privileges.

66. As a direct and proximate result of Tuality's actions, Murphy has suffered injuries and damages including, but not limited to, loss of past and future earnings, and loss of past and future benefits.

67. Such violations of USERRA were willful and Murphy requests an award of liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C).

## DEMAND FOR JURY TRIAL

68. Murphy requests trial by jury pursuant to Fed. R. Civ. P. 38 of all issues so triable.

## REQUESTED RELIEF

WHEREFORE, Murphy asks that the court grant the following relief:

- On the first, second, and third causes of action, compensatory damages, including but not limited to loss of past and future earnings and loss of past and future benefits pursuant to 38 U.S.C. § 4323(d)(1)(B).

PAGE 10 - COMPLAINT - USERRA

- On the first, second, and third causes of action, (a) liquidated damages pursuant to 38 U.S.C. § 4323(d)(1)(C); (b) an order requiring compliance pursuant to 38 U.S.C. § 4323(d)(1)(A); and (c) costs of suit, inclusive of reasonable attorneys' fees, expert witness fees, and other litigation expenses pursuant to 38 U.S.C. § 4323(h)(2).

- On all causes of action, as against each and every defendant, equitable relief as this Court may deem proper.

- On all causes of action, appropriate interest, costs and disbursements, and such other and further relief as the Court may deem proper.

Respectfully submitted September 21, 2014.

    /s/   Marianne Dugan
Marianne Dugan, OSB # 932563
Attorney for Plaintiff
259 E. 5th Ave., Ste 200-D
Eugene, Oregon 97401
(541) 338-7072

Local Counsel for Plaintiff

[*Pro hac vice* application will be filed by:

Michael W. Macomber, Esq.
Tully Rinckey P.L.L.C.
441 New Karner Rd.
Albany, New York
(518) 218-7100
Fax no. (518) 218-0496

To be lead counsel for plaintiff]

PAGE 11 - COMPLAINT - USERRA