# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **JAMES M. MURPHY**, | Case No. 3:14-cv-01498-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **TUALITY HEALTHCARE**, | |
| Defendant. | |

James M. Murphy, 5080 Riordan Hill Road, Hood River, OR 97031. *Pro se.*

Connie Elkins McKelvey and Katie M. Eichner, LINDSAY HART, LLP, 1300 S.W. Fifth Avenue, Suite 3400, Portland, Oregon 97201. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Dr. James M. Murphy ("Murphy") brings this suit against his former employer, Tuality Healthcare ("Tuality"), under the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4335. Murphy asserts that Tuality violated USERRA in three ways by: (1) failing to reemploy Murphy after he completed his military service, in violation of 38 U.S.C. § 4313; (2) discharging Murphy without cause within 180 days of his military service, in violation of 38 U.S.C. § 4316; and (3) discriminating against Murphy because of his service, in violation of 38 U.S.C. § 4311. Tuality moves for summary judgment against all

of Murphy's claims, arguing that Murphy is not entitled to USERRA's protections because Murphy independently contracted with Tuality and was not Tuality's employee. Murphy cross-moves for partial summary judgment to determine his status as an employee. For the reasons that follow, Tuality's motion is denied and Murphy's motion is granted.

## STANDARDS

A party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the burden of establishing the absence of a genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court must view the evidence in the light most favorable to the non-movant and draw all reasonable inferences in the non-movant's favor. *Clicks Billiards Inc. v. Sixshooters Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001). Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient . . . ." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation and quotation marks omitted).

Where parties file cross-motions for summary judgment, the court "evaluate[s] each motion separately, giving the non-moving party in each instance the benefit of all reasonable inferences." *A.C.L.U. of Nev. v. City of Las Vegas*, 466 F.3d 784, 790-91 (9th Cir. 2006) (quotation marks and citation omitted); *see also Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) ("Cross-motions for summary judgment are evaluated separately under [the] same standard."). In evaluating the motions, "the court must consider each party's evidence,

regardless under which motion the evidence is offered." *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 532 (9th Cir. 2011). "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case." *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010). Thereafter, the non-moving party bears the burden of designating "specific facts demonstrating the existence of genuine issues for trial." *Id.* "This burden is not a light one." *Id.* The Supreme Court has directed that in such a situation, the non-moving party must do more than raise a "metaphysical doubt" as to the material facts at issue. *Matsushita*, 475 U.S. at 586.

## BACKGROUND

Tuality operates Tuality Community Hospital (the "Hospital"), an acute-care hospital located in Hillsboro, Oregon. Dkt. 20-1 at 1. Murphy is an anesthesiologist and a member of the National Guard. In May 2008, Murphy signed a Practice Development Agreement (the "PDA") with Tuality under which Tuality provided Murphy with financial assistance to develop an anesthesiology practice in Hillsboro. Dkt. 20-3. In return, Murphy worked full-time, five days a week, at the Hospital. Dkt. 20-3 at 5. Murphy was permitted to take up to 50 working days of vacation per year. Dkt. 20-3 at 5.

In June 2008, Murphy and Tuality entered into an Anesthesia Services Agreement (the "ASA") regarding his work at the Hospital. Dkt. 20-2. The ASA described Murphy as an "independent contractor" and stated that the nature of the relationship was not that of employer-employee. Dkt. 20-2 at 1-2. Murphy was responsible for paying his own taxes, billing patients for his services, and for collecting payment from his patients, although Tuality provided Murphy with quarterly stipends. Dkt. 20-2 at 2, 7. Tuality provided Murphy with the equipment, supplies, and materials necessary to perform anesthesia services. Dkt. 20-2 at 7. Murphy worked

according to the schedule set by Tuality's Medical Director, Dr. Hildebrant ("Hildebrant").
Dkt. 20-2 at 5.

Either party could terminate the relationship under the ASA upon 90-days' notice.
Dkt. 20-2 at 8. The ASA prohibited Murphy from providing anesthesia services at any other
hospital or facility in Washington County, Oregon, unless Tuality and Murphy entered into a
written agreement providing otherwise. Dkt. 20-2 at 2. During the period of time that Murphy
worked full-time for Tuality, he also worked for Providence Hood River Hospital in Hood River
County, Oregon. Dkt. 29-2.

On September 9, 2009, Murphy was on-call at the Hospital when he got into a physical
altercation with a colleague from the Hospital, Dr. Duran ("Duran"). Dkt. 29-1 at 3. Murphy had
consumed one or two glasses of wine shortly before the altercation. Dkt. 29-1 at 2. Murphy went
back to work at the Hospital the following day. Dkt. 20-1 at 6. The Oregon State Medical Board
(the "Board") brought a disciplinary action against Murphy because of his use of alcohol while
he was on-call at the Hospital. Dkt. 29-1 at 3. The Board found that Murphy's actions violated
recognized community ethical standards. Dkt. 29-1 at 11.[1]

In mid-September 2009, Murphy left the Hospital to serve in active duty with the
National Guard for six weeks. Dkt. 20-1 at 6. He returned to work at the Hospital on October 26,
2009. Dkt. 20-1 at 6. Murphy did not take a formal leave of absence from Tuality. Upon his
return, Murphy asked Hildebrant to adjust his schedule so that he did not work at the Hospital at
the same time as Duran. Dkt. 20-1 at 9-10. On October 28, 2009, Tuality sent Murphy a 90-day
notice letter, stating that Tuality was terminating Murphy's employment without cause. Dkt. 20-

---

[1] The Oregon Court of Appeals reversed this finding, holding that Murphy was
prejudiced by the Board's failure to provide him with adequate notice of the basis for his
discipline. Dkt. 29-1 at 11.

1 at 15. Murphy worked at the Hospital intermittently from the end of October 2009 through the beginning of January 2010. Dkt. 20-1 at 6-7. Tuality revoked Murphy's clinical privileges at the Hospital on January 26, 2010. Dkt. 20-1 at 16.

## DISCUSSION

The purposes of USERRA include the "[e]ncouragement of noncareer service in the uniformed services by eliminating or minimizing the disadvantages to civilian careers and employment which can result from such service," and the "[p]rohibition of discrimination against persons because of their service in the uniformed services." USERRA Manual, § 1:1 (2015). To affect those purposes, USERRA grants reemployment rights to employees who leave civilian jobs to perform military service and provides for the protection of employees from employment discrimination. *Id.* USERRA does not provide protections for an individual against his or her employer if the individual is an independent contractor rather than an employee. 20 C.F.R. § 1002.44(a). Murphy and Tuality dispute whether Murphy independently contracted with Tuality, and thus has no cause of action under USERRA, or whether he was Tuality's employee, and thus may invoke USERRA. Tuality also argues that the Court should not consider Murphy's August 12, 2015 declaration (Dkt. 29) in deciding the cross-motions for summary judgment, asserting that it contradicts Murphy's prior deposition testimony, contains hearsay, and is irrelevant. Because the facts asserted in Murphy's declaration are relevant to the parties' cross-motions, the Court first addresses Tuality's evidentiary objections. The Court then turns to the issue of whether, as a matter of law, Murphy was Tuality's employee for purposes of USERRA.

## A.  Tuality's Evidentiary Objections

Tuality argues that the Court should not consider Murphy's declaration because it contradicts Murphy's prior deposition testimony and thus is a sham affidavit. The deposition was

from a previous arbitration proceeding between Tuality and Murphy concerning Murphy's debts under the PDA that is unrelated to this case. The sham affidavit rule provides that a party cannot manufacture an issue of fact by presenting an affidavit that contradicts prior deposition testimony. *Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 998 (9th Cir. 2009). Courts are cautioned, however, that:

> It must be recognized that the sham affidavit rule is in tension with the principle that a court's role in deciding a summary judgment motion is not to make credibility determinations or weigh conflicting evidence. Aggressive invocation of the rule also threatens to ensnare parties who may have simply been confused during their deposition testimony and may encourage gamesmanship by opposing attorneys. We have thus recognized that the sham affidavit rule "should be applied with caution."

*Id*. (quoting *Sch. Dist. No. 1J v. ACandS, Inc.*, 5 F.3d 1255, 1264 (9th Cir. 1993). The sham affidavit rule requires (1) that the court make a factual finding that any alleged contradiction between a proffered affidavit and prior testimony is actually a sham, and (2) that the contradiction is clear and unambiguous. *Van Asdale*, 577 F.3d at 998-99.

The sole prior deposition testimony Tuality relies on is as follows: "Q. Were you an employee of Tuality? A. [Murphy] No, sir." Dkt. 20-1 at 3. This testimony is a legal conclusion. Additionally, this testimony does not conflict with Murphy's declaration in this case, which sets forth the underlying facts regarding the nature of Murphy's relationship with Tuality. Thus, the Court does not find Murphy's declaration to be a sham affidavit.

Tuality additionally argues that Murphy's declaration contains hearsay and focuses on information that is irrelevant to the question of whether he was Tuality's employee. Tuality, however, does not identify any specific paragraph or statement that supposedly contains hearsay. The Court considers Tuality's objection as to relevancy to be duplicative of the summary judgment standard. *See Burch v. Regents of the Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D.

Cal. 2006) (noting that "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself[.]"). The Court has reviewed the evidence and the parties' arguments under the appropriate summary judgment standard. The Court does not consider inadmissible evidence in deciding the cross-motions for summary judgment.

## B.  Whether Murphy is an Employee under USERRA

Congress intended that USERRA "would define 'employee', in the same expansive manner as under the Fair Labor Standards Act . . . . and the issue of independent contractor versus employee should be treated in the same manner as under the Fair Labor Standards Act." H.R. Rep. No. 103-65(*l*), at 2454 (1993). Thus, a court may look to Fair Labor Standards Act ("FLSA") case law for guidance when considering whether an individual is an independent contractor or employee for purposes of USERRA. *See Evans v. MassMutual Fin. Grp.*, 856 F. Supp. 2d 606, 609 (W.D.N.Y. 2012) ("Though the case law on this issue in the USERRA context is sparse, cases interpreting analogous provisions in the Fair Labor Standards Act . . . are relevant in this regard."); USERRA Manual § 2:13 ("In enacting USERRA, Congress expressed an intent that the issue of whether a person is an independent contractor or employee be decided in the same manner as under the FLSA.").[2]

---

[2] Tuality argues that the Court should look to Title VII cases that consider whether anesthesiologists are independent contractors or employees for guidance in this case. Specifically, Tuality asserts that the Court should consider the Seventh Circuit's decisions in *Vakaharia v. Swedish Covenant Hosp.*, 190 F.3d 799 (7th Cir. 1999), and *Alexander v. Rush N. Shore Med. Ctr.*, 101 F.3d 487 (7th Cir. 1996), where the Seventh Circuit uses a similar test in the independent contractor versus employee analysis as that set forth in USERRA's regulations at 20 C.F.R. § 1002.44. In support of the proposition that the Court can consider Title VII cases in determining whether an individual is an independent contractor or employee under USERRA, Tuality quotes the Supreme Court's statement in *Staub v. Proctor Hospital*, 562 U.S. 411, 417 (2011), that USERRA is "very similar to Title VII." The *Staub* Court, however, made this statement when comparing USERRA's provision describing when an employer engages in prohibited conduct to a nearly identical provision in Title VII. *Id.* at 416-17. Thus, the *Staub*

"The FLSA's definition of employee has been called the 'broadest definition that has ever been included in any one act.'" *Torres-Lopez v. May*, 111 F.3d 633, 638 (9th Cir. 1997) (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)). Under the FLSA, the "common law concepts of 'employee' and 'independent contractor' are not conclusive determinants of the FLSA's coverage." *Real v. Driscoll Strawberry Assocs.*, 603 F.2d 748, 754 (9th Cir. 1979). Rather, the Ninth Circuit applies the "economic realities" test, under which "employees are those who *as a matter of economic reality* are dependent upon the business to which they render service." *Id.* (emphasis in original) (quoting *Bartels v. Birmingham*, 332 U.S. 126, 130 (1947)). Under the economic realities test, the existence of a contract describing an individual as an independent contractor is not a dispositive or controlling consideration. *See Real*, 603 F.2d at 755 ("Economic realities, not contractual labels, determine employment status for the remedial purposes of the FLSA.").

Courts in the Ninth Circuit consider six factors in determining whether an individual is an independent contractor or employee under the economic realities test:

> 1) The degree of the alleged employer's right to control the manner in which the work is to be performed; 2) the alleged employee's opportunity for profit or loss depending upon his managerial skill; 3) the alleged employee's investment in equipment or materials required for his task, or his employment of helpers; 4) whether the service rendered requires a special skill; 5) the degree of permanence of the working relationship; and 6) whether the service rendered is an integral part of the alleged employer's business.

---

Court did not suggest that the independent contractor versus employee analysis in USERRA is the same as that used in Title VII. Indeed, in *Leramo v. Premier Anesthesia Med. Grp.*, 2011 WL 2680837 (E.D. Cal Jul. 8, 2011), another Title VII case discussed by Tuality, the Eastern District of California stated that *Vakharia* and *Alexander* "apply only to Title VII claims." *Id.* at *10. Thus, in determining whether Murphy is an employee under USERRA, the Court follows Congress's guidance and considered the issue within the FLSA framework, rather than the Title VII context.

*Perez v. Oak Grove Cinemas, Inc.*, 68 F. Supp. 3d 1234, 1242 (D. Or. 2014) (quoting *Donovan v.*

*Sureway Cleaners*, 656 F.2d 1368, 1370 (9th Cir. 1981)).[3] No single factor is dispositive; rather,

whether an individual is an employee under this inquiry "depends 'upon the circumstances of the

whole activity.'" *Donovan*, 656 F.2d at 1371 (quoting *Rutherford Food Corp. v. McComb*,

331 U.S. 722, 730 (1947)).

### 1. Right to Control

Courts generally consider the degree of supervision an alleged employer has over an

individual in determining the extent of the alleged employer's right to control the individual,

although the fact that an individual is not supervised in detail at all times does not necessarily

mean the individual is an independent contractor. *See Chao v. Westside Drywall, Inc.*, 709 F.

Supp. 2d 1037 (D. Or. 2010). "'Control is only significant when it shows an individual exerts

such a control over a meaningful part of the business that she stands as a separate economic

entity.'" *Mathis v. Housing Auth. of Umatilla Cnty.*, 242 F. Supp. 2d 777, 783 (D. Or. 2002)

(quoting *Usery v. Pilgrim Equip. Co., Inc.*, 527 F.2d 1308, 1312-13 (5th Cir.)). Murphy asserts

that Tuality would schedule him to a hospital room, that he could not self-refer patients, and that

he had to accommodate the surgeon's preferences when providing anesthesia services. Dkt. 29

---

[3] USERRA's regulations provide a nearly identical six-factor test to be used when determining whether an individual is an independent contractor or employee:

> (1) The extent of the employer's right to control the manner in which the individual's work is to be performed; (2) The opportunity for profit or loss that depends upon the individual's managerial skill; (3) Any investment in equipment or materials required for the individual's tasks, or his or her employment of helpers; (4) Whether the service the individual performs requires a special skill; (5) The degree of permanence of the individual's working relationship; and, (6) Whether the service the individual performs is an integral part of the employer's business.

20 C.F.R. § 1002.44(b). No single factor is dispositive. *Id.* § 1002.44(c).

at 3-4. Additionally, under the ASA, Murphy was required to "respond to the directives" of Tuality's Medical Director. Dkt. 20-2 at 5.

Tuality also exercised a great deal of control over Murphy's work schedule, which supports finding an employer-employee relationship. *See Evans*, 856 F. Supp. 2d at 610. The ASA required Murphy to work full-time at the Hospital for at least 42 weeks per year according to the schedule set by Hildebrant. Murphy also had to receive permission from Hildbrant to adjust Murphy's schedule. Further, under the ASA, Murphy was required to attend regular anesthesia and surgical services meetings. Dkt. 20-2 at 4. This factor weighs in favor of finding an employee relationship.

### 2. Opportunity for Profit or Loss

The fact that Murphy did not receive a salary tends to support a finding that Murphy was an independent contractor. *See Chao*, 709 F. Supp. 2d at 1065. Murphy was responsible for billing patients for his anesthesia services and for collecting his payment.

Murphy, however, was not free to charge whatever he chose to charge. The ASA required that Murphy's rates generally conform to those of other anesthesiologists in the Portland area. Dkt. 20-2 at 7. Additionally, the ASA required Murphy to join the Tuality Health Alliance, which set fee limits for anesthesiologists. Dkt. 20-2 at 4; Dkt. 29 at 3. Murphy also asserts that Tuality dictated which room he would provide services in, regardless of who the patient was or if they had insurance, and that he was not permitted to self-refer patients. Dkt. 29 at 3-4. Furthermore, Tuality paid Murphy quarterly stipends, and provided financial assistance to Murphy under the PDA.

Although Murphy did work at Providence Hood River Hospital, he did so on his own time while also working full-time at the Hospital. An individual may work for more than one entity and still be considered an employee for purposes of the economic realities test. *Smith v.*

*City of Phx.*, 2015 WL 6811660, at *4 (D. Ariz. Nov. 6, 2015). Thus, this factor weighs slightly in favor of finding that Murphy was an independent contractor, and not an employee.

### 3. Investment in Equipment or Materials

Under the ASA, Tuality provided Murphy with the vast majority of the equipment and supplies used by Murphy and all of the support staff. This factor weighs in favor of finding that Murphy was an employee.

### 4. Special Skill

The parties do not dispute that anesthesia requires a special skill. The fact that an individual has technical skills, however, does not necessarily indicate that they are an independent contractor; rather, courts also look to whether technical skills are used in an independent manner. *Chao*, 709 F. Supp. 2d at 1065; *see also Baker v. Flint Eng'g & Constr. Co.*, 137 F.3d 1436, 1443 (10th Cir. 1998) (finding that although plaintiff welders were highly skilled and were not told by defendant how to complete a particular weld, they were told by the defendant where and when to weld, and thus did not exercise their skills in an independent manner). Murphy, like other anesthesiologists who worked for Tuality, worked at the Hospital and according to the schedule provided for him by Hildebrant. Thus, Murphy did not use his anesthesia skills in an independent manner. This factor weighs slightly in favor of finding that Murphy was an employee.

### 5. Permanence of the Relationship

The ASA permitted each party to terminate the agreement without cause upon 90-days' notice, which is a fact that tends to support a finding that Murphy was an independent contractor. *Moba v. Total Transp. Servs., Inc.*, 16 F. Supp. 3d 1257, 1265 (W.D. Wash. 2014) (finding that a contract which gives either party the power to terminate the agreement upon written notice weighs in favor of independent contractor status). The ASA, however, was subject to automatic

renewal, Dkt. 20-2 at 8, which weighs in favor of finding that Murphy was Tuality's employee. *See Donovan*, 656 F.2d at 1372 ("[T]rue independent contractors have a fixed employment period . . . ."). Additionally, the purpose of the PDA was to aid Murphy in establishing an anesthesiology practice, and Murphy worked full-time for Tuality for more than a year. The intent to enter into a long-term relationship also tends to indicate that this was an employer-employee relationship. *See Evans*, 856 F. Supp. 2d at 610. Overall, this factor weighs slightly in favor of finding that Murphy was an employee.

### 6. Integral Part of Tuality's Business

"This factor turns on whether the service the worker performs is integral to the business, not on whether a worker is individually integral." *Chao*, 709 F. Supp. 2d at 1065. The parties do not dispute that the provision of anesthesiology services is an integral part of Tuality's business. Thus, this factor weighs in favor of finding an employee relationship.

### 7. Analysis

Tuality argues that the Court should consider Murphy's prior positions and representations in analyzing whether he was an independent contractor. For example, in July 2009, Murphy completed an Oregon Practitioner Credentialing Application in which he stated that he was a solo practitioner and did not list Tuality as an employer. Dkt. 20-6 at 9. Additionally, during the Board's disciplinary proceeding, Murphy asserted that Tuality's bylaw prohibiting the consumption of alcohol while on call did not apply to him because it only applied to employees. Dkt. 20-7 at 9. Tuality also points to the fact that the ASA defines Murphy's position as that of an independent contractor.

An individual's subjective intent, however, is not determinative in the economic realities analysis under FLSA, and, by extension, under USERRA. *See Real*, 603 F.2d at 755 ("[t]he subjective intent of the parties to a labor contract cannot override the economic realities . . . .").

Even an individual who desires to be an independent contractor can still be found to be an employee under the law based on the economic realities test. *Mathis*, 242 F. Supp. 2d at 785-86. For that reason, "contractual intention is not a dispositive consideration" in the independent contractor versus employee analysis. *Id.* at 785 (citing cases). Accordingly, facts which indicate a desire on the part of Murphy to be an independent contractor do not alter the economic realities of his relationship with Tuality. *See id.* at 786 ("[T]he issue of [the plaintiff's] desire to be an independent contractor does not alter the economic reality that she was an employee.").

Drawing all reasonable inferences in favor of Tuality, the economic realities of the relationship between Murphy and Tuality show that Murphy was Tuality's employee for the purposes of USERRA. Murphy worked full-time for Tuality at the Hospital for more than a year under a schedule provided by Tuality's Medical Director. In exchange, Tuality paid Murphy quarterly stipends and provided Murphy with financial assistance. Although Murphy did some work for another medical institution during this time, he could not provide anesthesia services in Washington County without first entering into an additional written agreement with Tuality permitting such an arrangement. Given the "expansive manner" in which Congress intended the term "employee" to be construed under USERRA, H.R. Rep. No. 103-65(*l*), at 2454, the Court finds as a matter of law that Murphy was Tuality's employee for purposes of this statute.

## CONCLUSION

Tuality's motion for summary judgment (Dkt. 19) is DENIED. Murphy's cross-motion for partial summary judgment (Dkt. 26) is GRANTED.

**IT IS SO ORDERED**.

DATED this 15th day of January, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge